O

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| VS. | § | CRIMINAL NO. L-05-456 |
| ROBERT K. KIRKLAND | § | |

<u>MEMORANDUM AND ORDER</u>

Pending is Defendant's motion to withdraw his guilty plea, filed September 26, 2006 (Docket No. 24).  This issue initially arose at a scheduled sentencing hearing on September 12, 2006, in the context of a motion which had been filed by Defendant's attorney on September 6, 2006 (Docket No. 23), asking to withdraw because of a conflict of interest with his client.

The motion to withdraw the guilty plea is supported by a four-page undated letter from the Defendant, attached as Exhibit A to the motion.  Defendant's original attorney has now responded to the motion (Docket No. 30) as has the Government (Docket No. 31).  Also, the Laredo Branch Chief of the Federal Public Defender's Office, who joined the case as co-counsel, has filed a sworn statement describing her involvement in the case (Docket No. 33).  Defendant's guilty plea was entered on May 11, 2005 (Docket No. 17).  The transcript of that proceeding is now filed at Docket No. 29.

A request to withdraw a guilty plea is governed by Rule 11(d), Fed. R. Crim. P.  The rule provides that a defendant wishing to withdraw his plea after it has been accepted by the Court, but before sentence, may do so if he can show "a fair and just reason."  The Court is directed to consider seven factors in deciding such a motion:  whether defendant asserts his innocence, whether withdrawal would prejudice the Government, whether the defendant delayed in filing the motion, whether withdrawal would inconvenience the Court, whether adequate assistance of counsel was available, whether the plea was knowing and voluntary, and whether withdrawal would waste judicial resources.  United States v. Adam, 296 F.3d 327 (5th Cir. 2002).  No single factor is dispositive and the decision is to be based on the totality of the circumstances.

Defendant's reasons for seeking withdrawal of his plea can be summarized as follows.  After Defendant was arrested and subsequently taken before a magistrate judge, he was advised of the charges but did not understand them.  From the outset, he consistently maintained his innocence.  His attorney, Assistant Federal Public Defender Wade Bainum, pressured him to plead guilty, advising that a jury would not believe "a white truck driver over a Hispanic man or woman."  Bainum was not prepared for trial and advised the Defendant that, if he would plead

2

guilty, "all I would get was probation."  Bainum also told the

Defendant that if he were to plead guilty, he "could have the

case moved to the southern Indiana district."  Because of

Bainum's lack of interest and the poor health of the Defendant's

wife, the Defendant had "little or no option but to accept the

Plea Agreement."  Later, in September 2005, Bainum conversed with

the Defendant to prepare a statement accepting responsibility for

the PSR.  Defendant reminded Bainum that he had been coerced into

pleading guilty and wondered why the case had not been moved to

Indiana.  Defendant "knew nothing" of the presence of six

undocumented aliens in the sleeper compartment of his truck.

    Attorney Bainum's response is summarized as follows.  His

investigator interviewed the material witnesses, who advised that

the Defendant was present at his truck and observed the aliens

enter it.  The witnesses gave descriptions matching the

appearance of the Defendant.  Bainum raised the prospect of a

polygraph examination hoping that, if Defendant passed, the

Government might dismiss the case.  The Defendant declined to

take a polygraph without a guarantee of dismissal.  The day

before the final pretrial conference, the Defendant was

continuing to maintain his innocence.  During a lengthy meeting,

trial strategies and sentencings possibilities were discussed.

Bainum opined that if Defendant were found guilty at trial, his

"worst situation" for sentencing would likely be 33-41 months. Bainum also advised that, post-Booker, probation was a possibility, and that if Defendant accepted the plea agreement, probation was a realistic possibility.  However, Defendant was never promised probation.  Bainum acknowledged Defendant's protestation of innocence and his right to trial but expressed the opinion that the Government's case was "fairly strong."  The Defendant expressed disbelief that anyone would believe "an illegal hispanic" over a citizen such as himself.  Defendant made reference to a person he wished to call as a witness if he could obtain a continuance but never revealed the name of the witness, nor apparently what relevant information the witness might have. Ultimately, Bainum recommended that the Defendant accept the plea offer but no conclusion was reached at that time.  The next day Bainum was advised that Defendant had decided to accept the plea agreement.

In an August 2005 telephone conference concerning the PSR, Defendant again claimed to be innocent and indicated that he had been pressured to plead guilty.  Bainum offered to file a motion to withdraw the plea.  He advised the Defendant to call the next day if that was his desire.  He did not recall ever receiving a call from the Defendant.  In September 2005, the Defendant again told Bainum that he wanted the case transferred to Indiana.

Bainum replied that, since the guilty plea had already happened in Texas, he did not think a transfer would be likely at that time.

The affidavit of attorney Marissa Perez-Garcia is generally consistent with that of attorney Bainum.  She joined the case as co-counsel in anticipation of a trial in this case. The Defendant was protesting his innocence but wanted a jury trial in Indiana. He was correctly told that a transfer would be possible, if at all, only if Defendant proposed to enter a guilty plea. Defendant was upset with the prospect of a jury which might consist primarily of Mexican-Americans.  Defendant was explained the likely sentencing ranges if found guilty at trial and if pleading guilty.  He was never promised probation or any particular sentence.  The attorneys opined that the Government's plea offer was a favorable one, but also that Defendant should go to trial if he persisted in claiming innocence.  After an overnight break, Defendant indicated a desire to plead guilty.

After the rearraignment hearing, however, Defendant again advised the attorneys that he was innocent. He was told that if a motion to withdraw the plea were granted, he would necessarily proceed to trial.  If the Court denied the request, he would run the risk of losing the benefit of his plea agreement by no longer accepting his responsibility for the offense.  Defendant decided

5

to return to Indiana and ponder the matter.  Attorney Perez-Garcia again spoke with the Defendant months later, in February 2006, but does not recall his discussing withdrawal of his plea at that time.  The topic arose again in September 2006, when the case was set for sentencing.

Based on the transcript, the pertinent portions of Defendant's guilty plea proceedings can be summarized as follows. The Court instructed the Defendant as to the elements of the alleged offense in considerable detail and Defendant indicated his understanding of them (TR. 4-7).  Defendant was then placed under oath.  He admitted having sufficient time to consult with his attorney (TR 9); that he was taking pain pills for his back but functioned mentally okay and was understanding the Court (TR. 10).  He advised that he received "an open head wound" in 1994 but did not think it "affected my brain" (TR. 11).  Defendant indicated that he was pleading guilty voluntarily without any threats or pressure (TR. 11-12).  Defendant was told that if he continued to plea guilty, he would have to accept whatever sentence was given, regardless of what his lawyer might have predicted or what he might have hoped for, and that he waived any appeal of the sentence.  Defendant acknowledged his understanding of that admonition (TR. 17-18).  When specifically asked if his lawyer or the prosecutor or anyone else had advised him of any

6

other benefit or arrangement in connection with his guilty plea,

Defendant answered in the negative (TR. 18-19).  Defendant

indicated that he was a high-school graduate (TR. 41).  The

prosecutor then described the Government's version of the facts

in the case, including the fact that Defendant was sitting in the

driver's seat of his truck when the aliens entered through the

passenger door towards the sleeper compartment (TR. 42).  When

specifically asked how far he intended to take the aliens,

Defendant replied "to Dilley" (TR. 44).  He added that he planned

to then return to Laredo, where his wife was apparently waiting

to visit a doctor in Mexico.

<u>Discussion of Adam Factors</u>

1.  Defendant has protested his innocence on several

occasions during the pendency of this case.  However, in open

court and under oath, Defendant declared his guilt.  Moreover, as

observed by the Government, Defendant even added information

previously unknown to the Government, namely that Defendant was

taking the undocumented aliens to Dilley, Texas, a town situated

on Interstate Highway 35, between Laredo and San Antonio.  The

facts in the case also render a claim of innocence highly

suspect.  If Defendant is innocent, six adults were somehow in

the sleeper compartment of his tractor trailer, immediately

behind the driver's seat, without Defendant's knowledge.

Further, the aliens would have entered the vehicle without knowing when or where Defendant would be traveling.  In addition to the standard risks of apprehension by law enforcement agents, the aliens would have incurred the added risk of being inevitably discovered by an innocent truck driver.  Also, both defense attorneys have indicated that the detained material witnesses identified the Defendant as being present and observing the aliens boarding his vehicle.

     2.  Withdrawal of the guilty plea at this stage would seriously prejudice the Government.  As stated by the Government, and consistent with the long-standing policy in this Division, once a Defendant enters a guilty plea to alien transporting, the material witnesses are deported to their native country.  Obtaining their return for trial at this late date would be extremely unlikely.

     3.  The Defendant pled guilty on May 11, 2005.  The motion to withdraw the plea was filed sixteen months later, in September 2006.

     4.  The Court gives little weight to the factor of inconvenience.  There is no shortage of work on this Court's criminal docket, but if the other factors called for withdrawal of the plea and setting of a jury trial, the Court would not hesitate to do so.

5.  Defendant was at all times adequately represented by counsel.  The Court has observed the work of the Federal Public Defender's Office in this Division for over 25 years and finds that the attorneys in that office are consistently well prepared and vigilant in defending their clients.  The Court is absolutely convinced that neither attorneys Perez-Garcia nor Bainum promised this Defendant a probated sentence or that he could continue to plea not guilty and have his jury trial transferred to Indiana. Further, it is the responsibility of every attorney to give the client a truthful evaluation of the strengths and weaknesses of the case.  For reasons discussed above, it is not surprising that the attorneys characterized the Government's case as strong and explained to the Defendant that a prospective sentence would likely be lower in the event of a plea agreement.  Such advice does not constitute improper pressure on a defendant.

6.  The Court has no doubt, based on the transcript of the proceeding, that Defendant's guilty plea was made knowingly and intelligently.  The Court also concludes that it was voluntary, in the sense that no one was unlawfully threatening or pressuring this Defendant.  The Defendant was undoubtedly suffering the normal anxieties experienced by anyone facing conviction of a federal felony and the prospect of a prison sentence.  The Court also accepts the fact that Defendant is anxious about his own

physical ailments and especially those of his wife.  His personal letter dwells on these circumstances, but they do not render a guilty plea involuntary.

7.   Similar to factor 4 above, the Court does not place great weight on the factor of wasting judicial resources. Frankly, the current motion has already consumed a significant amount of extra time.  A jury trial would add to that time consumption and, but for the fact that the key witnesses are now gone, would very likely result in a finding of guilt.

Conclusion

Weighing the foregoing factors, and for all the reasons stated above, the Court DENIES the motion to withdraw the guilty plea in this case.  Defendant's sentencing will be set in due course.

DONE at Laredo, Texas, this 24th day of January, 2007.

George P. Kazen
United States District Judge